IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARC E. SMITH, | * | C.A. No. 12-227-LPS |
| | * | |
| Plaintiff, | * | **TRIAL BY JURY DEMANDED** |
| | * | |
| v. | * | |
| | * | |
| PERDUE FARMS, INCORPORATED, | * | |
| a Maryland corporation, | * | |
| | * | |
| Defendant. | * | |

**AMENDED COMPLAINT**

1. Plaintiff Marc E. Smith is a resident of the State of Delaware, residing at 11445 Moon Shadow Lane, Laurel, Delaware 19956.

2. Defendant Perdue Farms, Incorporated, is a Maryland corporation whose registered agent for service of process in the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3. Defendant is an employer within the State of Delaware and within the jurisdictional coverage of Title VII of the Civil Rights Act.

4. Jurisdiction is conferred on this Court by 42 U.S.C. §2000e-5(f)(3).

5. Plaintiff brings this action to redress the wrongs done to him by Defendant's discrimination against him on the basis of his sex, and retaliation against him for his complaints of sex discrimination.

6. Plaintiff timely submitted two complaints of discrimination on the basis of sex and retaliation to the Delaware

Department of Labor (the "DDOL") and the Equal Employment Opportunity Commission (the "EEOC").

7. Plaintiff has received Notices of Right to Sue for the above-referenced charges from the EEOC.

8. Plaintiff has timely filed this Complaint and amended the Complaint within ninety (90) days of his receipt of the respective Notices of Right to Sue.

9. Plaintiff began employment with Defendant on or about November 30, 2005, at Defendant's business location in Bridgeville, Delaware.

10. Most recently, Plaintiff was employed by Defendant as a utility operator at Defendant's Bridgeville, Delaware location.

11. At all times relevant to this Complaint, Plaintiff was qualified for his job position and satisfactorily performed all duties of his job position.

12. During the period of his employment, Plaintiff's immediate supervisor was Tyson Jefferson, Assistant Mill Manager ("Jefferson"). Jefferson's immediate supervisor was Chuck Broderick, Mill Manager ("Broderick").

13. During the period of Plaintiff's employment, Broderick subjected Plaintiff to verbal and physical sexual harassment.

14. This verbal and physical sexual harassment by Broderick included, but was not limited to, the following:

(a) On or about February 16, 2009, Broderick came up behind Plaintiff, touched Plaintiff's hips, wiggled his (Broderick's) hips, and made grinding and humping motions. When

Plaintiff pushed Broderick away and asked what he was doing, Broderick said, "I know you like it."

(b)  On or about March 13, 2009, when Plaintiff asked Broderick what was for lunch, Broderick responded, "I have a tube steak smothered in drawers for you."

15. Initially, Plaintiff did not complain of sexual harassment due to fear of retaliation. However, beginning in or about March 2009, and specifically following the March 13, 2009, comment mentioned above, Plaintiff made internal complaints to Defendant's Human Resources Department, including to Defendant's Human Resources Manager, David Jones ("Jones"), regarding sexual harassment by Broderick, as well as by other employees of Defendant, including Clint Lewis, Harry Vanicoli, and Jefferson. These internal complaints constituted protected activity pursuant to 42 U.S.C. §2000e-3, and were made on a number of occasions, including, but not necessarily limited to, March 13, 2009; March 23, 2009; April 3, 2009; April 6, 2009; April 7, 2009; and May 8, 2009.

16. On or about March 17, 2009, in response to Plaintiff's initial complaint of discrimination following the March 13, 2009, incident, Defendant issued Plaintiff a disciplinary write up for alleged insubordination and inappropriate language. Said disciplinary write up was issued in retaliation for Plaintiff's complaint of sexual harassment.

17. Despite Plaintiff's complaints of sexual harassment, the sexual harassment of Plaintiff by superiors and co-workers

continued, and Defendant did not restrain the continued sexual harassment of Plaintiff by superiors and co-workers.

18. On or about April 2, 2009, Plaintiff filed charges of sexual harassment and retaliation with the DDOL and the EEOC. Upon information and belief, Defendant was served with said charges between May 6, 2009, and May 11, 2009.

19. On or about April 3, 2009, Vanicoli showed Plaintiff a picture of a donkey and a woman engaged in a sexual act, and Vanicoli then told Plaintiff to give oral sex to co-worker Erwin Hall.

20. On or about May 9, 2009, Plaintiff's co-workers were ridiculing and harassing him. Plaintiff called Broderick and complained regarding this ridicule and harassment.

21. Due to the continued harassment by Plaintiff's co-workers, Plaintiff experienced a panic attack and became light-headed and dizzy, rendering Plaintiff unable to operate the heavy equipment that he was required to operate pursuant to his job duties.

22. Plaintiff requested permission separately from Broderick and from Jefferson to leave, but neither Broderick nor Jefferson would permit him to leave.

23. Plaintiff was unable to continue working and called both Broderick and Jefferson to again request permission to leave, but neither Broderick nor Jefferson would answer his calls. Plaintiff then left messages for both Broderick and Jefferson that he was leaving, and Plaintiff left work after completing approximately six hours of his shift.

24. Prior to his complaints of sexual harassment beginning in or about March 2009, Plaintiff had been allowed to leave work if he became ill during his shift.

25. Plaintiff returned to work for his next scheduled shift on or about May 11, 2009. Shortly thereafter, Plaintiff began having another panic attack and asked agents of Defendant to be taken to Defendant's Wellness Center. However, agents of Defendant, including Jefferson, refused to take Plaintiff to the Wellness Center, and Jefferson informed Plaintiff that he was being written up for leaving early on May 9, 2009. Jefferson then told Plaintiff that he was required to leave the premises.

26. Subsequently, Plaintiff then called an HR representative of Defendant, Valerie Drysden ("Drysden"), and informed her that agents of Defendant would not take him to the wellness Center. Drysden instructed Plaintiff to call 911.

27. Plaintiff called 911 and requested an ambulance. Plaintiff was then taken by ambulance to the emergency room.

28. On or about May 11, 2009, Defendant issued Plaintiff a three-day suspension for leaving early on May 9, 2009.

29. On or about May 15, 2009, Plaintiff was seen by a physician at Defendant's Wellness Center. Jones did not appear for a scheduled meeting that day with Plaintiff, and Drysden told Plaintiff that Jones would call him.

30. Jones called Plaintiff later on May 15, 2009, and told Plaintiff that he was terminated for allegedly leaving early without permission on May 9, 2009. When Plaintiff attempted to

explain that he had asked permission from Broderick and Jefferson to leave because he was feeling ill, Jones refused to listen.

31. Upon information and belief, a similarly situated employee of Defendant, Richie Oliphant, had left work early without permission on or about May 9, 2009, and had not suffered any discipline.

32. The reason proffered by Defendant for suspending Plaintiff and subsequently terminating Plaintiff, *i.e.*, leaving work early without permission on May 9, 2009, was pretextual and intended to mask the true reason for the suspension and subsequent termination, *i.e.*, retaliation against Plaintiff for his complaints of sexual harassment.

33. The wrongful acts committed by Defendant, acting by and through its agents, as stated hereinabove, were wilful, wanton, and committed in bad faith.

34. As a direct result of the discriminatory, retaliatory, and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, physical and emotional injury, pain and suffering, mental anguish, humiliation, and lost wages and benefits.

### COUNT I - TITLE VII RETALIATION

35. Plaintiff hereby restates and incorporates by reference paragraphs 1 through 34 hereinabove.

36. Defendant, acting by and through its agents, retaliated against Plaintiff for his complaints of sexual harassment by suspending Plaintiff and subsequently terminating his employment.

37. As a direct result of the retaliatory conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages and benefits.

WHEREFORE, Plaintiff demands judgment against Defendant for:

(a) Back pay, including interest;

(b) Compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary losses;

(c) Punitive damages;

(d) Pre-judgment and post-judgment interest;

(e) Attorney's fees and costs;

(f) Reinstatement or, in the alternative, front pay; and

(g) Any other relief that this Court deems just.

### COUNT II - TITLE VII DISCRIMINATION

38. Plaintiff hereby restates and incorporates by reference paragraphs 1 through 37 hereinabove.

39. Defendant, acting by and through its agents, discriminated against Plaintiff on the basis of his sex by sexually harassing him and subjecting him to a hostile work environment.

40. As a direct result of the discriminatory conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages and benefits.

WHEREFORE, Plaintiff demands judgment against Defendant for:

    (a)   Back pay, including interest;

    (b)   Compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary losses;

    (c)   Punitive damages;

    (d)   Pre-judgment and post-judgment interest;

    (e)   Attorney's fees and costs;

    (f)   Reinstatement or, in the alternative, front pay; and

    (g)   Any other relief that this Court deems just.

SCHMITTINGER & RODRIGUEZ, P.A.

BY: _____
NOEL E. PRIMOS, ESQUIRE
Bar I.D. #3124
414 S. State Street
P.O. Box 497
Dover, DE   19903
(302) 674-0140
Attorneys for Plaintiff

DATED: 4-12-12
NEP:rp