# EXHIBIT 9

03/17/2009   08:58   3023372222                HURDLE MITCHELL                    PAGE 01/01

MARCH 17,2009

I MARC SMITH TURN CHUCK BRODERICK IN FOR SEXUAL HARASSMENT ON MARCH 13,2009 AT THE BRIDGEVILLE FEEDMILL IN BRIDGEVILLE DELAWARE. I CUSSED CHUCK BECAUSE OF THIS. YES I AM GUILTY FOR THIS BUT HE CUSSED ME FIRST AND HAD HARASSED ME ALREADY. I ASKED HIM IF HE WAS BUYING LUNCH HE SAID I HAVE TUBE STEAK SMUTHERED IN DRAWS. THIS WAS NOT THE FIRST TIME. A FEW WEEKS AGO HE GRINDED UP BEHIND ME LIKE A MAN WOULD DANCE WITH A WOMAN IN A HIP HOP CLUB AND I TURNED AND ASKED WHAT HE WAS DOING. THIS WAS WITNESSED. THERE HAVE BEEN MANY MORE TIMES BUT I HAVE NOT REPORTED BECAUSE I KNOW THEY WILL COVER UP WHAT THEY DID AND MAKE ME OUT TO BE THE ONE IN THE WRONG JUST AS THEY DID. NOW IF I TURN THEM IN AGAIN IF THEY DO IT AGAIN THEY WILL SAY I AM PICKING SO I GUESS THIS IS A LOOSING BATTLE. IF THE H.R. DEPARTMENT DOESN'T RESOLVE THIS PROBLEM IN THE FUTURE IF IT HAPPENS AGAIN. I WILL HAVE NO RECOURSE BUT TO SEEK OUTSIDE ASSISTANT .

**EXHIBIT**

Smith 10
SP 11/23/12

PF 000097

MAR 17 AM 9:

# EXHIBIT 10



April 3, 2009

Jim Perdue

Re: Bridgeville Feed Mill

Jim,

In a letter you received dated March 17, 2009, an associate stated the Feed Mill manager has sexually harassed him. I have completed the investigation and find the charges unfounded. The associate got upset when he thought he was performing duties he was not hired for. He used profanity when speaking with management and received a disciplinary for doing so.

Any questions Jim, please call me.

David Jones
Live Production HR



# EXHIBIT 11



PERDUE FARMS, INCORPORATED
16447 Adams Road
Bridgeville, DE  19933
Office: 302-337-3985
Fax: 302-337-2219

From:       Chuck Broderick
To:          All Mill Associates
Date:       April 9, 2009

Subject:   Sexual Harassment Training

On April 29, 2009 there will be three training sessions for Sexual Harassment Awareness / Avoidance. Tabitha Newton will be here from the Corporate Training Center to provide this training. There will be three 1-hour sessions and all associates must attend one. Anyone who misses or is on vacation will be required to make it up at another location and / or time. The sessions are as follows:

| | |
|---|---|
| Session 1 | 6:00 AM |
| Session 2 | 2:30 PM |
| Session 3 | 4:00 PM |

Please make arrangements to be at one of these sessions.



# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARC E. SMITH,

               Plaintiff,

     v.

PERDUE FARMS INCORPORATED,

               Defendant.

Civil Action No. 12-227 (LPS)

## DECLARATION OF HARRY VANNICOLA

I, Harry Vannicola, declare:

1.     I am over the age of 21 years and have personal knowledge of, and am competent to testify to, the facts stated below.  I am submitting this Declaration voluntarily and of my own free will, without fear or threat of reprisal or promise of any benefit.

2.     I am currently employed by Perdue Farms Incorporated ("Perdue" or the "Company") as a Driver at the Company's Bridgeville, Delaware grain facility ("Bridgeville facility").  I have worked at the Bridgeville facility for almost 29 years.  I am familiar with the Plaintiff, Marc Smith ("Smith").  We both worked at the Bridgeville facility from the time that Smith started until he left in mid 2009.

3.     I am not gay.  I am a heterosexual male, and I am only attracted to women.  I have been married for approximately 30 years and have two children.  I have never said that I am gay, and I have never engaged in any behaviors that would suggest that I am gay.

4.     I have never said, done, or suggested anything to Smith that could imply that I am gay, and I have never come on to him in any fashion or otherwise suggested that I desired him.  I have never been sexually attracted to Smith (or any other man) in any way or at any time.

5.     I understand that Smith claims that Tyson Jefferson sent me a text with a picture of a woman and a donkey engaged in a sexual act or making out, that I showed Smith this picture, and that I then told Smith that he should give oral sex to a co-worker, Erwin Hall.  Jefferson actually sent me a text message with a picture of a donkey and Homer and Bart Simpson that said "Get your ass back to work," or words to that effect.  There was no woman in the picture, and it did not depict a sexual act or making out.  I did show the picture to Smith, but

only because he wanted to see it. I never said that he should give oral sex to Hall, or any words to that effect. I have no idea why Smith would say such a thing.

6.     The Bridgeville facility is an all-male environment, and it is not uncommon for the employees to use sexual or other inappropriate language, to tell lewd jokes or stories, and to use profanity. It can be like a guys' "locker room," at times. Smith also participated in this "locker room" banter. Nothing I ever said or did when participating in the "locker room" banter was ever intended to convey sexual desire, and I never understood any of the comments that I overheard or that were said to me or to others to be conveying sexual desire.

7.     I did not sexually harass Smith, and I never witnessed anyone else sexually harass Smith. I have no reason whatsoever to believe that Smith was subjected to sexual harassment.

I solemnly affirm and declare under the penalty of perjury and upon personal knowledge that the foregoing is true and correct.

_____              _____
Harry Vannicola                                              Date

2

# EXHIBIT 13

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MARC E. SMITH,<br><br>    **Plaintiff,**<br><br> **v.**<br><br>PERDUE FARMS INCORPORATED,<br><br>    **Defendant.** | Civil Action No. 12-227 (LPS) |

## DECLARATION OF TYSON JEFFERSON

I, Tyson Jefferson, declare:

1. I am over the age of 21 years and have personal knowledge of, and am competent to testify to, the facts stated below.  I am submitting this Declaration voluntarily and of my own free will, without fear or threat of reprisal or promise of any benefit.

2. I am currently employed by Perdue Farms Incorporated ("Perdue" or the "Company") as the Mill Supervisor of the Company's Bridgeville, Delaware grain facility ("Bridgeville facility").  I have worked at the Bridgeville facility for 20 years.

3. I am familiar with the Plaintiff, Marc Smith.  Smith was employed at the Bridgeville facility from November 2005 through May 2009.  I was involved in the decision to hire Smith to serve as a Panel Operator and to promote him to a Utility Operator.  I was his first-level supervisor in both of these positions.  My supervisor was and is Chuck Broderick, the Mill Manager.

4. I am not gay.  I am a heterosexual male, and I am only attracted to women.  I am married and have three children.  I have never said that I am gay, and I have never engaged in any behavior that would suggest that I am gay.

5. I have never said, done, or suggested anything to Smith that could imply that I am gay, and I have never come on to him in any fashion or otherwise suggested that I desired him.  I have never been sexually attracted to Smith (or any other man) in any way or at any time.

6. I understand that Smith claims that I sent Harry Vannicola, a Perdue truck driver at the Bridgeville facility, a text with a picture of a donkey and a woman engaged in a sexual act

or making out. Neither is true. I did text Vannicola, who was on light duty in the office at the time, a text with a picture of a donkey and Homer and Bart Simpson, with a message that said, "Get your ass back to work," or words to that effect. I was disciplined for sending this text message.

7.      The Bridgeville facility is an all-male environment, and it is not uncommon for the employees to use sexual and other inappropriate language, to tell lewd jokes or stories, and to use profanity. It can be like a guys' "locker room" at times. Smith also participated in this "locker room" banter. Nothing I ever said or did when participating in the "locker room" banter was ever intended to convey sexual desire, and I never understood any of the comments that I overheard or that were said to me or to anyone else to be conveying sexual desire.

8.      I did not sexually harass Smith, and I never witnessed anyone else sexually harass Smith. I have no reason whatsoever to believe that Smith was subjected to sexual harassment. After Smith complained of sexual harassment, Human Resources investigated his claims and could find no evidence to support them. Nevertheless, the entire Bridgeville facility, including myself, attended mandatory sexual harassment training.

9.      I did not retaliate against Smith in any way. His employment continued without change following both a verbal altercation with Broderick on March 13, 2009, for which he received written discipline, and his sexual harassment complaint. Smith was discharged only because he abandoned his job without permission, even after Broderick and I had both instructed him to stay. David Jones, Human Resources Director, made the decision to discharge Smith and communicated that decision to Smith directly.

I solemnly affirm and declare under the penalty of perjury and upon personal knowledge that the foregoing is true and correct.

_____                    2/27/13
Tyson Jefferson                                     Date

2

# EXHIBIT 14

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | 09040236M<br>17C-2009-00689 |

| Delaware Department of Labor | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>**Mr. Marc E. Smith** | Home Phone *(Incl. Area Code)*<br>**(302) 280-6210** | Date of Birth<br>**05-17-1977** |
|---|---|---|

Street Address                                          City, State and ZIP Code
**32291 Briarwood Ln, Laurel, DE 19956**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name<br>**PERDUE INCORPORATED** | No. Employees, Members<br>**500 or More** | Phone No. *(Include Area Code)*<br>**(302) 855-5579** |
|---|---|---|

Street Address                                          City, State and ZIP Code
**16447 Adams Rd.,  Bridgeville, DE 19933**

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN<br>[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] OTHER *(Specify below.)* | Earliest **02-16-2008**   Latest **04-03-2008**<br>[X] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**Jurisdiction:**   Respondent has employed Charging Party since 11/31/05, most recently as a utility operator in Bridgeville, DE. Respondent employs more than 500 persons in Delaware.

**Charging Party's protected class:** Gender (male), retaliation

**Adverse employment action:** Sexual harassment, discipline

**Brief statement of allegations:** On 02/16/09, Chuck Broderick (male), mill manager, stood behind Charging Party and made grinding/humping motions. On 03/13/09, when Charging Party asked what was being served for lunch, Broderick responded, "...tube steak smothered in drawers." Charging Party responded by calling Broderick a "piece of shit" and reported the offensive behavior to Adrianna Mason and David Jones, both in Human Resources. On 03/17/09, Respondent issued Charging Party a disciplinary notice for co-insubordination. On 04/03/09, Tyson Jefferson (male), mill supervisor, sent a photo of a donkey and a woman in a sexual act to a co-worker Harry Vanicoli (male) who showed it to Charging Party. Vanicoli then told Charging Party that he should give oral sex to Erwin Hall, Dispatcher, and Charging Party again complained of harassment. Respondent failed to take action on Charging Party's harassment complaints until 04/09/09 when it finally announced that it would provide sexual harassment training for all employees.

**Respondent's explanation:** None given

**Applicable law(s):** Title VII of the Civil Rights Act, as amended; The Delaware Discrimination in Employment Act, as amended

**Comparator(s) or other specific reason(s) for alleging discrimination:** Although Charging Party was disciplined for his comment to Broderick, Respondent has not addressed the behavior of Broderick and others who were doing the harassment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Apr 22, 2009**          *X [signature]*<br>Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

PERDUE 000-001-0889   EXHIBIT   Smith 16   [signature] 11/20/18

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | 09040 236M |
| | [X] EEOC | 17C-2009-00689 |

| Delaware Department of Labor | and EEOC |
|---|---|
| State or local Agency, if any | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Nothing Follows

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| Apr 22, 2009 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date        Charging Party Signature | |

# EXHIBIT 15

*12-239*
*SMITH, MARC*
*DOCUMENTS*

## MARC SMITH CHRONOLOGY

1.      Mark Smith began working for Perdue at its Feed Mill in Bridgeville, Delaware in November, 2005.

2.      Smith was a utility operator.

3.      Smith's Direct Supervisor was Tyson Jefferson, ("Jefferson"), Assistant Mill Manager.

4.      Jefferson's boss was Chuck Broderick, ("Broderick"), Mill Manager.

5.      On or about February 16, 2009, Broderick (Mill Manager) came up behind Smith, touched Smith's hips, and wiggled his hips, making grinding/humping motions. Smith pushed Broderick back and said, "What are you doing?". Broderick said, " I know you like it".

6.      Erwin Hall ("Hall"), a Dispatcher, saw Smith pushing Broderick back away from him.

7.      Smith warned Broderick not to do that again. He was fearful of complaining because Broderick is the Mill Manager and Smith thought he might lose his job. Therefore, Smith did not call Human Resources ("HR").

8.      On February 24, 2009, Broderick wrote a memo to Carol Phillips, in HR Perdue Agribusiness recommending Smith for a supervisory position. (Exhibit "1") The Memo states, inter alia:

> "Marc Smith has been an associate in good standing at the Bridgeville Mill. He started as a panel operator on second shift and eventually moved to first. He continues to operate the panel for us yet has trained in all areas and has advanced to Utility Operator. He is capable of, and interested in advancement. He has progressed as far as he can her unless a supervisory position was to open up. We currently have no open slots for him to advance into at this time.
>
> Marc is highly trainable and has trained a number of associates himself. He is self-motivated; he had on his own initiative taken classes at Delaware Tech in Georgetown.

-1-



EXHIBIT
Smith 19
EP 11/27/12
PENGAD 800-631-6989

P000190

He is very comfortable around a computer, and has some level of exposure to Microsoft Office, although that was not a requirement of his current position. He is familiar with the safety requirements around the mill, and many of these would translate in to the grain operations. I feel that with the right training and leadership he would be able to advance into a supervisory position. ..."

9.   On or about March 13, 2009, Smith went to talk to Broderick about his job description. He wanted to know why he, as a Utility Operator, had to perform Pellet Durability Index ("PDI") tests when at other Perdue plants that task was performed by Quality Control.

10.   Smith at all times performed the PDI's and kept records confirming that the tests were performed. He was just curious as to why Bridgeville did it differently. Broderick said he would have to check in to it and get back to him.

11.   As Smith was leaving, he asked Broderick what was for lunch. Broderick responded, " I have a tube steak smothered in drawers for you".  Smith got angry at the sexual, inappropriate comment, and told Broderick that he was tired of this, and "you're a worthless piece of shit boss".

12.   Smith then immediately went upstairs and called HR which is located at Perdue's Main Office in Georgetown, Delaware. He spoke to Valerie Drysden ("Drysden"?) (not sure of last name) and possibly Adrianna Mason. One of them said they would get him help and someone would call him back.

13.   As Smith was on the phone, his Direct Supervisor, Jefferson, came up to him and said, "Let's take a walk, so you don't do something stupid". Smith told Jefferson it was too late.

14.   Erwin Hall, ("Hall"), the Dispatcher on duty, witnessed Jefferson trying to talk Smith out of complaining to HR. Alex Quebral ("Quebral"), a clean-up guy, may also have heard Jefferson tell Smith to get off the phone with HR and take a walk before doing something stupid.

-2-

P000191

15.     Jefferson left Smith, and went to see Broderick. Soon thereafter, Jefferson called Smith on the phone and told him to go home for one day.

16.     On his way home, (still March 13, 2009), Smith received a call on his cell phone from David Jones ("Jones"), HR Manager. Smith told Jones what happened with Broderick that day, what happened with Broderick in February, and about other sexually inappropriate conduct at the Mill, including how for a long time Clint Lewis ("Lewis") was taking Vernon Russell ("Russell"), into the Office, turning the lights off, and dry humping him. Russell never turned Lewis in to HR because Lewis is good buddies with Broderick. Smith expressed to Jones his fear that he would lose his job from making these sexual harassment complaints. Jones reassured Smith, telling him, " don't worry, I'll get to the bottom of it".

17.     On or about Tuesday, March17, 2009 Smith spoke with Jones on the phone again in Broderick's office. Broderick and Jefferson were present. Nothing was discussed about Broderick's sexual harassment of Smith, or of Lewis's sexual harassment of Russell. Instead, Smith was advised that he was being written up for cussing at Broderick. He was presented with a disciplinary write-up for "Insubordination" and "Inappropriate Language", (Exhibit "2"), and told that if he did not sign it, it would be insubordination. The Disciplinary Record indicated that it was a "First Offense".

18.     Smith tried to write in the Comments section of the Disciplinary Record and tried to attach a separate typed statement about what happened. He was not permitted to do either. Smith started to write " Associate Comment: I turn Chuck Broderick in for sexual harr..". Broderick and Jefferson would not allow him to finish his written comment, pulled the form away from him, and crossed out what he had written. **Smith was trying to write that he was only**

-3-

disciplined AFTER he turned Broderick in to HR for sexual harassment.

19.    To Smith's knowledge, Broderick was not disciplined for his sexually inappropriate conduct towards Smith. Also, to his knowledge, nothing was done about his report of Lewis's conduct towards Russell.

20.    Smith later sent the typed statement he tried to attach to the Disciplinary Record to HR. (Exhibit " 3".) He also faxed it directly to Jim Perdue ("Perdue").

21.    Smith kept a notebook of various events at work. A copy of relevant pages are attached as Exh. "4". Much of what follows is take from the contemporaneous notes.

22.    On March 17, 2009, Smith called Jones to ask why he never addressed the sexual harassment complaint or interviewed any witnesses. Smith left a message because Jones did not answer. Jones did not return the call.

23.    Sexual harassment continued. On March 17, 2009 Vernon Russell ("Russell") a co-worker told Smith to get his knee pad ready. Kenny Ross ("Ross"), another co-worker) yelled Smith's name and said, "blow me".

24.    On March 18, 2009 Louis Hudson (co-worker) asked Smith, "What's up girlfriend?" and looked him over. Then he asked if Smith was sore, (referring to his butt being sore), and said to Smith, "Don't worry, I still love you".

25.    Smith then called HR in Georgetown to find out the name of Jones boss. He was told someone would call him back with that information. They did not.

26.    On March 18, 2009 Smith sent a fax to Perdue asking for an investigation.

27.    On March 20, 2009, Smith told Russell that Kevin ? was going to be mad because his new computer was bigger and better. Russell said, "that's not all that is big and better", as he

P000193

pushed his mid-section out and laughed.

28.     On March 23, 2009, Jones showed up to do an investigation. Smith was interviewed at

9:00 a.m.  He told Jones again about the February sexual incident with Broderick, the March 13th

sexual comment of Broderick, and the other sexual conduct at the Mill including Lewis

repeatedly taking Russell into the office and dry humping him.

29.     During the meeting with Jones on March 23, 2009, Jones told Smith that Broderick

admitted making "the tube steak smothered in draws" comment.

30.     Jones was hostile to Smith during the March 23, 2009 meeting.

31.     Hall was also interviewed by Jones.

32.     Smith was initially pleased that an investigation was being done and was naively hopeful

that it would end the sexual conduct and sexually hostile work environment. Smith presumed that

the investigation was being done in response to his fax to Perdue. Therefore, Smith started typing

a memo to Perdue on the computer to thank him for instigating the investigation. Broderick saw

Smith using the computer to write Perdue. Broderick had Jefferson call Smith down to the office

where he was told NOT to use the computer. Curiously, at the same time that Smith was told not

to use the computer, other employees, Hall and Russell, were on the computer on the internet.

Broderick said nothing to them about computer use. The memo Smith wrote to Perdue is attached

as Exhibit "5".  He sent it to Perdue even though it was not as coherent as he would have liked

because he could not finish it.

33.     On March 30, 2009 Smith called HR and asked for something in writing confirming that

Broderick admitted making the " tubesteak smothered in drawers" comment. Smith was given

the runaround.

-5-

34.    Smith called HR back on March 31st. He left a message and did not get a return call.

35. .    On April 1, 2009 Smith walked into the break room. Russell was talking about how he could get any woman because he has a circus cock.

36.    On April 3, 2009 Smith observed a picture Jefferson sent of a donkey and a woman making out to Harry Vanicoli's ("Vanicoli") cell phone. Vanicoli told Smith that he would not turn Jefferson in to HR, and that if Smith turned Jefferson in, he would deny it. Then, Vanicoli told Smith to get on his knees and give Hall oral sex. Hall witnessed this.

37.    Smith called HR and reported to Jones what had happened. Jones told him again that Broderick had admitted making the "tube steak smothered in drawers"comment. Jones told Smith he had taken the comment out of context. Jones also told him that there was a sexual harassment meeting scheduled for the Feed Mill later in the month. Jones did not want to hear anything about the picture Jefferson sent to Vanicoli, or Vanicoli telling Smith to give oral sex to Hall.

38.    On April 3, 2009, Smith went to the Delaware Department of Labor's ("DDOL") Milford Office to report the sexual harassment and retaliation. He was given paperwork and advised to return for an appointment on April 22, 2009 at 2:30 p.m. to formally file the Charge.

39.    On or about April 4, 2009, Smith arrived at work for his first shift. Robert Doughty ("Doughty") , a co-worker on the third shift had not made 100 tons of crumbles as he was supposed to do by the end of his shift.  Also, Doughty had not swept the area as required. Broderick was present, but said nothing to Doughty about the area being unswept, and the crumbles not being made.

40.    On either April 4, 2009 or April 5, 2009, Hurdle Mitchell ("Mitchell"), Maintenance

-6-

P000195

Supervisor, told Smith to get a new pair of boots, because his boots were dirty and wet from riding his motorcycle to work. Smith complied.

41.   On April 6, 2009, Jefferson was outside the Panel Room three or four times looking at inventory sheets. (The Panel Room is where the Dispatcher, Utility Operator and several other workers operate. It is where Smith controls the feed making process.) Jefferson told Smith to take plastic off the bags. The bags had been present during third shift. However, Jefferson had never told Doughty to remove the plastic from the bags, even though Jefferson was there for about two hours of Doughty's shift.

42.   On April 6, 2009 Smith left messages for both Jones and Broderick asking them to do something about Vanicoli telling him to give Hall oral sex.

43.   On April 7, 2009, Smith observed Jefferson snooping around his area, trying not to be seen.

44.   On April 7, 2009, Smith went to Broderick and asked him if they were going to talk to Hall about the obscene donkey and woman picture Jefferson sent to Vanicoli's cell phone, and Vanicoli telling Smith to give Hall oral sex. Broderick later called Hall to his office.

45.   On April 9, 2009, Smith noticed that Jefferson was walking in his area more.

46.   Smith told Jefferson that he was tired because he had been at the hospital with his wife all night. Smith commented that if he started dozing off to sleep he would have to go home. Jefferson told him he couldn't go home.

47.   Also on April 9, 2009 Jefferson wrote Smith up for not starting his inventory sheet. Smith felt that Jefferson was picking on him because Smith had reported to HR that on April 3rd Jefferson sent an obscene picture (donkey and woman picture) to Vanicoli's cell phone. Smith

-7-

P000196

called Jones about the write-up. Jones said he would take care of it and it went away.

48.     On April 9, 2009 Broderick issued a Memo that there was going to be sexual harassment training on April 29, 2009 for each shift. Exhibit "6".

49.     Perdue was at the Feed Mill on April 10, 2009. Smith wanted to talk to him about the sexual harassment he was experiencing. However, Jefferson went to great extremes to keep Smith busy and away from Perdue. Jefferson called on his walkie-talkie radio, and assigned Smith to move the diverter back and forth between bins nos. 28 and 29. Smith thought that Jefferson was upstairs observing him on the diverter. Later, after Smith finished the job, he went downstairs to try to catch up with Perdue. He then saw Jefferson out on the railroad tracks on the track mobile. Jefferson could not have gotten there before Smith if Jefferson had really been upstairs observing him on the diverter. Therefore, Smith concluded that Jefferson was never upstairs and was just trying to keep Smith busy and away from Perdue.

50.     On April 13, 2009, Smith observed that no would hold a conversation with him. Keith Hudson ("Hudson") and Craig Dohner ("Dohner") told Smith that Mitchell told them not to talk to him.

51.     On April 22, 2009, Doughty did not have his steel toe shoes on. Neither Mitchell nor Jefferson said anything to him.

52.     On April 22, 2009, Smith finalized his Charge of Discrimination at the DDOL's Milford, Delaware office. At some point, Smith told Hall that he had filed a Charge at the Delaware Department of Labor.

53.     Sexual Harassment training occurred on April 29, 2009. Papers handed out are at Exhibit "7". However, the training was useless.

---

-8-

P000197

54. Right after the sexual harassment training on April 29, 2009 Vanicoli and David Banks ("Banks") were looking at porn on a cell phone. As Smith walked by Hudson said, "watch out, Marc will turn us in". Smith started to say something to Broderick, but figured it was useless, since nothing had been done about the other complaints he had made about sexual harassment.

55. On April 30, 2009, Jefferson stated in front of Smith and Hall that it is a shame that Lewis has to get on his knees before he comes upstairs– conveying the idea that Lewis was giving Broderick a blow job.

56. On April 30, 2009 Russell told Smith that he had to watch him now because Smith might turn him in for sexual harassment.

57. On May 1, 2009 there was a problem with the truck being loaded backwards by the computer. Broderick came up to fix the problem. He was cussing, saying God damn, and using other profanities. Jefferson jokingly told Broderick that the cussing offended him and he was going to HR. Jefferson was staring at Smith when he said it, and then laughed loudly.

58. On May 4, 2009 Russell told Smith to stay away from him because he didn't want to be accused of sexual harassment.

59. Also on May 4, 2009 Russell and Jefferson were talking about growing plants and what to put on them. They mentioned miracle grow, chicken manure, bananas, and then Jefferson said, "you can just go out and take a shit on it".

60. Smith received a copy of the Charge of Discrimination in the mail on or about May 6, 2009. He presumes that the Company received it at or about the same time.

61. On May 7, 2009 Smith again observed that Doughty did not have his steel shoes toe on and that the area was not clean. Broderick did nothing to Doughty.

-9-

P000198

62. On May 7, 2009 Jefferson sent pictures of a naked woman to Dohner's cell phone. Dohner showed it to Smith and told him that Jefferson said this was his new girl friend. Smith saw Jefferson's name and number on Dohner's phone. Smith was disgusted and could not believe that even after a Sexual Harassment seminar Jefferson, a Manager and his Direct Supervisor, would send an obscene picture to Dohner, and that Dohner would show it to Smith!

63. On May 7, 2009, Maintenance personnel were upset to learn that they had not been called to order chicken that week. (Employees can place orders to buy chicken at very cheap prices. Usually, Smith and another employee, Shakira Toliver, as a courtesy, not as part of their jobs, take orders from employees, place the orders with the plant, and then pick up and distribute the orders.). Jefferson harassed Toliver for not having made an announcement that week about getting chicken orders in. He threatened to write her up if she failed to solicit chicken orders in the future.

64. On May 8, 2009, Doughty did not have steel toe shoes on. Nothing was done about it.

65. Also on May 8, 2009 Keith Hudson was teasing Smith on the walkie-talkie radio. He kept telling him that the Company truck was not available for him to take to Georgetown to pick up the chicken orders. Hurdle, the Maintenance Supervisor, was present and did nothing to stop Hudson. Jefferson also was present and did nothing to stop Hudson's harassment of Smith.

66. Smith, who was tired of being picked on, called Jones and told him there was still stuff going on at the Feed Mill. Smith did not go into details because nothing had been done about the first round of complaints. He told Jones that he would just have to take it to the Delaware Department of Labor. Smith believes that Jones was aware that he had been to the Delaware Department of Labor. Jones comment to Smith was, "Do what you have to do".

-10-

67.     On Saturday May 9, 2009, Smith came in about 6 a.m. Hudson and Dohner (Maintenance co- worker) were talking on the walkie-talking radio making fun of him again about the chicken order. Hudson said,"You'll learn not to mess with us".

68.     Smith called Broderick on his cell pone (he was not at the Mill). Smith told Broderick that the guys were picking on him. Broderick called Hudson and told him to stop. He also called Mitchell, the Maintenance Supervisor, who was supposed to be coming in to the Mill.

68.     At some point Smith was trying to make feed, when there was an equipment breakdown. He called Keith and Dohner on the walkie-talkie, and they would not respond.

69.     Smith tried the equipment again. He still could not start it. Huson and Dohner still would not respond. So, Smith called Broderick again. Broderick told him that Mitchell was coming in.

70.     Hudson finally responded to Smith.  He was upset that Smith had called Broderick on him.  Hudson then said, on the walkie-talkie radio, "I'm going to come down and see if you're a man or not".

71.     Smith believes Mitchell heard the threat, and did nothing.

72.     Smith was very upset. He called Broderick again and told him that he needed to go home, that he was tired of these guys. Broderick told him he could not go home. Eugene Wilder ("Wilder") overheard Smith's call to Broderick.

73.     Smith then called Jefferson.  Smith told Jefferson that he was not feeling well, and needed to go home. By this point he was having a panic attack. He felt light-headed, he was dizzy, he was afraid to operate the heavy equipment. He was required to operate the forklift, move pallets, lift them up 30 feed and put them on the dock. Near the pallets it was 100 degrees.

74.     Jefferson also told Smith he could not leave. Wilder overheard the call with Jefferson too.

P000200

Quebral was helping in Receiving that day, and may have heard Smith ask Broderick and Jefferson to go home.

75.     Smith tried to continue but could not. He called Broderick and Jefferson. They did not answer his calls. Smith left messages for both of them that he was leaving.

76.     Smith clocked out around 12:13-12:18 p.m. He sat in his car for a while. He didn't feel good. He did not think he should drive.

77.     In the past, prior to complaint about sexual harassment, if Smith became sick during a shift he was allowed to leave.

78.     Smith returned to work at 6 a.m. on Monday, May 11, 2009. Hall started asking him questions. Smith became upset, and felt that he needed to go to the Wellness Center at the Perdue Plant in Georgetown.

79.     Smith called Broderick and asked him if he could be taken to the Wellness Center. He needed someone to take him there. He was lightheaded, dizzy, his heart was racing. He was having a panic attack.

80.     Smith called Jefferson. Jefferson told him he would be in soon.

81.     Smith sat upstairs waiting for Jefferson. The Dispatcher on duty that day (still May 11th), George Williams saw Smith and agreed he needed to go the Wellness Center.

83.     After waiting for awhile, Smith learned that Jefferson was downstairs. Jefferson was talking to Mitchell. Smith told Jefferson he needed to go to the Wellness Center. Jefferson told Smith to sit in the break room.

84.     Smith called 911 and requested an ambulance. Mitchell heard part of the conversation and told Smith he would take him to the Wellness Center by 8 a.m. Smith ended the call, relying on

P000201

Mitchell's promise to take him to the Wellness Center.

85.     Jefferson was on the phone with Broderick.

86.     Around 8 a.m. Smith was called into the office. Jefferson and Mitchell told him they were writing him up for leaving early on Saturday.  They ignored his requests to be taken to the Wellness Center.

87.     Smith was then told he had to leave the premises.

88.     Smith went to his car. He called HR from there. He spoke to Drysden. He told her that he was not feeling good, and that they would not take him to the Wellness Center. He told her that they just wrote him up. Drysden said she'd get back in touch with him. She did. She told him to call 911.

88.     While Smith was on the phone with Drysden, Jefferson and Mitchell came to the car and told Smith to leave the premises. Jefferson took the phone to talk to Drysden, and ended the call.

89.     Smith then called 911 and asked for an ambulance.  It arrived. As he was being loaded into the Ambulance,  Mitchell told Smith he had an hour to get his car out of there.

90.     Smith called his brother from the ambulance and told him to get his car at Perdue.

91.     Smith was taken to Seaford Hospital Emergency Room.  He was examined. He had high blood pressure. He was given Xanax– and anxiety medication. He had never had it before. He was released. A paper from the Hospital is at Exhibit "8 ".

92.     On May 11, 2009 Smith was given a three (3) day suspension for leaving the Mill early on Saturday, May 9, 2009.

93.     Smith saw a doctor at the Wellness Center on May 15, 2009.  He was also supposed to have a meeting with Jones that day in Georgetown.  Jones allegedly was unavailable. Smith was

-13-

P000202

told by Drysden that Jones would call him.

94.     Jones did not reach Smith until 3-4 p.m. on May 15, 2009. Jones told Smith that he was terminated for leaving early on Saturday, May 9, 2009. Smith told Jones that he had called Broderick and Jefferson to tell them he needed to leave because he was not feeling well. Jones did not want to hear it.

95.     Smith believes he was terminated because of his sexual harassment complaints, and because he went to the DDOL. He asked Broderick and Jefferson if he could leave because he was sick. He tried to work after they said "no", but he was physically incapable of it. He called them back and they did not answer his calls. He left messages for them that he was leaving.

96.     Smith believes that Riche Oliphant, ("Oliphant"), a truck driver, left early on May 9, 2009 and was not disciplined or fired.  Smith saw Oliphant park his 18 wheeler and leave on that date.

-14-

P000203

# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARC E. SMITH,

        **Plaintiff,**

   v.

PERDUE FARMS INCORPORATED,

        **Defendant.**

**Civil Action No. 12-227 (LPS)**

## DECLARATION OF CLINT LEWIS

I, Clint Lewis, declare:

1.     I am over the age of 21 years and have personal knowledge of, and am competent to testify to, the facts stated below. I am submitting this Declaration voluntarily and of my own free will, without fear or threat of reprisal or promise of any benefit.

2.     I am currently employed by Perdue Farms Incorporated ("Perdue" or the "Company") as a Second Shift Dispatcher at the Company's Bridgeville, Delaware grain facility ("Bridgeville facility"). I have worked at the Bridgeville facility for eleven years. I am familiar with the Plaintiff, Marc Smith. We both worked at the Bridgeville facility from the time that Smith started until he left in mid 2009.

3.     I am not gay. I am a heterosexual male, and I am only attracted to women. I have been married for 22 years and have four children. I have never said that I am gay, and I have never engaged in any behaviors that would suggest that I am gay.

4.     I have never said, done, or suggested anything to Smith that could imply that I am gay, and I have never come on to him in any fashion or otherwise suggested that I desired him. I have never been sexually attracted to Smith (or any other man) in any way or at any time.

5.     I understand that Smith claims that I would go into a dark room with Vernon Russell (a co-worker) and "dry-hump." This absolutely untrue. I never "dry-humped" with Russell or any other man.

6.     The Bridgeville facility is an all-male environment, and it is not uncommon for the employees to use sexual or other inappropriate language, to tell lewd jokes or stories, and to

use profanity. It can be like a guys' "locker room" at times. Smith also participated in this "locker room" banter. Nothing I ever said or did when participating in the "locker room" banter was ever intended to convey sexual desire, and I never understood any of the comments that I overheard or that were said to me or to others to be conveying sexual desire.

7.     I did not sexually harass Smith, and I never witnessed anyone else sexually harass Smith. I have no reason whatsoever to believe that Smith was subjected to sexual harassment.

I solemnly affirm and declare under the penalty of perjury and upon personal knowledge that the foregoing is true and correct.

_____                    _____
Clint Lewis                                                          Date

2

# EXHIBIT 17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARC E. SMITH,

                Plaintiff,

      v.

PERDUE FARMS INCORPORATED,

               Defendant.

Civil Action No. 12-227 (LPS)

### DECLARATION OF VERNON RUSSELL

I, Vernon Russell, declare:

      1.      I am over the age of 21 years and have personal knowledge of, and am competent to testify to, the facts stated below. I am submitting this Declaration voluntarily and of my own free will, without fear or threat of reprisal or promise of any benefit.

      2.      I am currently employed by Perdue Farms Incorporated ("Perdue" or the "Company") as a Lead Dispatcher at the Company's Bridgeville, Delaware grain facility ("Bridgeville facility"). I have worked at the Bridgeville facility for more than 21 years. I am familiar with the Plaintiff, Marc Smith. We both worked at the Bridgeville facility from the time that Smith started until he left in mid 2009.

      3.      I am not gay. I am a heterosexual male, and I am only attracted to women. I have been married for four years and have one child. I have never said that I am gay, and I have never engaged in any behaviors that would suggest that I am gay.

      4.      I have never said, done, or suggested anything to Smith that could imply that I am gay, and I have never come on to him in any fashion or otherwise suggested that I desired him. I have never been sexually attracted to Smith (or any other man) in any way or at any time.

      5.      I understand that Smith claims that I told him that he should get his knee pads ready, and that Kenny Ross (a co-worker) then said "Blow me." This did not happen. I did not say anything about knee pads, or any words to that effect, and I did not hear Ross say "Blow me" or anything even similar. I also understand that Smith claims that I would go into a dark room with Clint Lewis (a co-worker) and "dry-hump." This is absolutely untrue. I never "dry-humped" with Russell or any other man.

6.      The Bridgeville facility is an all-male environment, and it is not uncommon for the employees to use sexual or other inappropriate language, to tell lewd jokes or stories, and to use profanity. It can be like a guys' "locker room" at times. Smith also participated in this "locker room" banter. Nothing I ever said or did when participating in the "locker room" banter was ever intended to convey sexual desire, and I never understood any of the comments that I overheard or that were said to me or others to be conveying sexual desire.

7.      I did not sexually harass Smith, and I never witnessed anyone else sexually harass Smith. I have no reason whatsoever to believe that Smith was subjected to sexual harassment.

I solemnly affirm and declare under the penalty of perjury and upon personal knowledge that the foregoing is true and correct.

_____          02-07-13
Vernon Russell                                          Date

2

# EXHIBIT 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARC E. SMITH,

Plaintiff,

v.                                                        Civil Action No. 12-227 (LPS)

PERDUE FARMS INCORPORATED,

Defendant.

## DECLARATION OF LOUIS HUDSON

I, Louis Hudson, declare:

1.      I am over the age of 21 years and have personal knowledge of, and am competent to testify to, the facts stated below.  I am submitting this Declaration voluntarily and of my own free will, without fear or threat of reprisal or promise of any benefit.

2.      I am currently employed by Perdue Farms Incorporated ("Perdue" or the "Company") as a Driver at the Company's Bridgeville, Delaware grain facility ("Bridgeville facility").  I have worked at the Bridgeville facility for approximately six years and have worked at Perdue for eleven years.  I am familiar with the Plaintiff, Marc Smith.  We both worked at the Bridgeville facility from the time that Smith started until he left in mid 2009.

3.      I am not gay.  I am a heterosexual male, and I am only attracted to women.  I was married for eleven years but am now am divorced.  I have never said that I am gay, and I have never engaged in any behaviors that would suggest that I am gay.

4.      I have never said, done, or suggested anything to Smith that could imply that I am gay, and I have never come on to him in any fashion or otherwise suggested that I desired him.  I have never been sexually attracted to Smith (or any other man) in any way or at any time.

5.      I understand that Smith claims that I said to him: "What's up, girlfriend? Are you sore?  Don't worry, I still love you," or words to that effect.  I never said this or anything like this to Smith.  The Bridgeville facility is an all-male environment, however, and it is not uncommon for the employees to use sexual or other inappropriate language, to tell lewd jokes or stories, and to use profanity.  It can be like a guys' "locker room" at times.  Smith also participated in this "locker room" banter.  Nothing I ever said or did when participating in the

"locker room" banter was ever intended to convey sexual desire, and I never understood any of the comments that I overheard or that were said to me or others to be conveying sexual desire.

      6.     I did not sexually harass Smith, and I never witnessed anyone else sexually harass Smith. I have no reason whatsoever to believe that Smith was subjected to sexual harassment.

I solemnly affirm and declare under the penalty of perjury and upon personal knowledge that the foregoing is true and correct.

_Louis C Hudson_
Louis Hudson

_2/27/13_
Date

# EXHIBIT 19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARC E. SMITH,

               **Plaintiff,**

   v.

PERDUE FARMS INCORPORATED,

               **Defendant.**

                                    **Civil Action No. 12-227 (LPS)**

## DECLARATION OF ERWIN HALL

I, Erwin Hall, declare:

      1.     I am over the age of 21 years and have personal knowledge of, and am competent to testify to, the facts stated below.  I am submitting this Declaration voluntarily and of my own free will, without fear or threat of reprisal or promise of any benefit.

      2.     I am currently employed by Perdue Farms Incorporated ("Perdue" or the "Company") as a First Shift Dispatcher at the Company's Bridgeville, Delaware grain facility ("Bridgeville facility").  I have worked at the Bridgeville facility for more than 15 years and have worked for Perdue for a total of 24 years. I am familiar with the Plaintiff, Marc Smith.  We both worked at the Bridgeville facility from the time that Smith started until he left in mid 2009.

      3.     I am not gay.  I am a heterosexual male, and I am only attracted to women.  I was married for 16 years and have two children.  I have never said that I am gay, and I have never engaged in any behaviors that would suggest that I am gay.

      4.     I have never said, done, or suggested anything to Smith that could imply that I am gay, and I have never come on to him in any fashion or otherwise suggested that I desired him.  I have never been sexually attracted to Smith (or any other man) in any way or at any time.

      5.     I understand that Smith claims that I witnessed Chuck Broderick make humping or grinding motions toward Smith.  This is not true.  I did not witness Broderick take any such actions toward Smith or anyone else.  When David Jones in Human Resources interviewed me regarding Smith's claims of sexual harassment, I accurately informed him that I had never witnessed Broderick engage in any inappropriate behavior, including humping or grinding motions, towards Smith or anyone else.

6.      The Bridgeville facility is an all-male environment, and it is not uncommon for the employees to use sexual or other inappropriate language, to tell lewd jokes or stories, and to use profanity.  It can be like a guys' "locker room" at times.  Smith also participated in this "locker room" banter.  Nothing I ever said or did when participating in the "locker room" banter was ever intended to convey sexual desire, and I never understood any of the comments that I overheard or that were said to me or others to be conveying sexual desire.

7.      I did not sexually harass Smith, and I never witnessed anyone else sexually harass Smith.  I have no reason whatsoever to believe that Smith was subjected to sexual harassment.

I solemnly affirm and declare under the penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Erwin Hall

Date: 2/27/13

2